On the docket, student badge, 16-0, student 1-0, speaking of the state of Illinois, Clinton Avenue, DeMario J. Scott, defendant's accountants, arguing on behalf of the defendant's accountants, Mr. Paul A. Rogers, arguing on behalf of the Clinton Avenue, Ms. Mary A. Plunkett. Mr. Rogers, we had another Mr. Rogers earlier. Are you related to him by any chance? You know, because one of us spelled his name wrong. Both. Not both. But that's possible. Well, no, that would be possible, I guess, logically, but no. Thank you, Your Honor. Good morning. Good morning. Good morning, counsel from the state. May it please the Court, my name is Paul Rogers. I am with the Appellate Defender's Office, and I represent Mario Scott. Now, this case, as you know, raises two issues. The second issue contests the fine. I have nothing to say about that, except that the state has confessed error, and I urge this Court to accept that confession. So let's get right to the main issue, which I assume is why we're here today. And that issue concerns the sufficiency of retained trial counsel's performance as representation before and during trial. Counsel, with respect to that issue, in deciding whether there was any meaningful testing, or whether we have a chronic situation that is the case chronic, or a strickland situation, we have to look at the entire proceeding. Yes. In looking at the entire proceeding, can we, and or should we consider the result of the sentence after he was found guilty? No. And I have a couple of responses to that to flesh it out. First, and I think most importantly, a defendant who pleads not guilty, by definition, doesn't want to get to sentencing. And that's the defendant's right, is to choose to plead not guilty. Well, the strategy that Mr. Raff employed is pretty obvious from the record. He tried to negotiate the case with the state, correct? There's some references to negotiations. Well, he said there was an offer he wanted to take. Right, yes. The original, to go back, he was not the, it was the public defender at first, and then the public defender withdrew. The record had to be clarified, I think of Mr. Raff's suggestion, because there was a dispute as to whether or not the defendant was going to be eligible for class X. So he was seeking a class one sentence, which ultimately, not successful, it was class X. Case is continued again, an offer is made, offer is relayed to the client, doesn't take it, but opts for advanced trial. And then he gets the minimum sentence, where he has a horrendous record. Other than, up until 1995, a terrible record, and then, as the trial court said, a blip in 2006, he had an arrest for a nonviolent drug offense. And the judge gave him the minimum sentence. What strategy, given the facts of the case, which looked to be pretty ironclad, what strategy could Mr. Raff have employed, but for what he did? Okay, again, I have sort of a general response, and then a more specific response. The general response, again, is that it was the defendant's right to decline whatever offer the state was making. At that point, it was Mr. Raff's obligation to advocate at trial on behalf of his client. Now, is he required to make frivolous arguments? No. What argument could he have made for an acquittal? Okay, and that actually gets to the more specific things I was going to say, because that's one of the things the state essentially says is, well, what more could counsel have done here? And I will say what counsel could have done here. First, could have cross-examined Officer Dunteman. He's an arresting officer. He's the state's only live witness. He not only was an arresting officer, he was present for the interrogation that was recorded and the defendant's statement. During that video, at one point, it's around 17 minutes and 45 seconds to approximately 20 minutes, sometime in that area, the defendant seems to be crying, which raises questions about what the defendant's mental state might have been. That was an area maybe that could have been programmed cross-examination. Also, later... What would that have been relevant to, counsel? Well, it might have been relevant to the credibility of what was contained in the statement. It could have been an argument that... And you also note that on that video, the police are nudging, to put it mildly, Mr. Scott to cooperate, to tell the truth, that this is his chance. At one point, one of the officers says, you know, in DuPage County, we launch drug offenders. So again, that's an area of potential cross-examination. The other point I was making is that at some point on the video, towards the end, and I think it's around the 33-minute mark, give or take a few seconds there, the defendant said he was told there was only half a gram of cocaine that he received, which is relevant because that goes to lift the weight. If it's below a gram, it's class two, not class one. But most importantly, what could counsel have done? Counsel could have not stipulated to the chain of evidence the lab results. That's two out of the four elements of the charge of defense. Now, let's point out a few things. First of all, it would have been difficult for Mr. Rath to have required the state to have produced the forensic chemist. Can we go back, please? Yes. Ineffectiveness can be established one of two ways, either through some affirmative act of concession of guilt or through non-feasance, such as what you just described. Well, no, that wasn't non-feasance. Well, maybe it was. It was a no objection to the chain. If it was a stipulation, then maybe it was an affirmative act. So you've indicated that he made affirmative acts. He stipulated to these things, how would that have changed the result if he hadn't stipulated to the chain? That's your question? Yes. Does the record reflect that there was a problem with the chain? Actually, yes. And so I'll answer that question first. But if I forget, please remind me that I can answer it further in a more general way. Okay. Officer Duncan testified that he retrieved seven bags from the defendant. And he put those bags, which were People's Exhibit 1A, into an evidence envelope, and that was People's Exhibit 1. Stipulation was that the chemist received People's Exhibit 1, the envelope, in a sealed condition. She opened it up. I think it was a sheet. She opened it up, took out People's Exhibit 1A, which she describes, or according to stipulation, she would have testified contained one bag. So there's a question there about, well, what happened to the other six bags? Explain this. And the chemist also testified, or the stipulation was that she would have testified, that the weight was 1.24 grams, which is less than a quarter gram above the threshold to go from the 2 to a 1. So that's another possible area of cross-examination. And the second point I wanted to make is that, and I quoted this in the brief, but I think it's worth quoting again. It's from the Dodson case. Essentially, it's about the value and the purpose of cross-examination. Which was the negative that I was referring to. Right. The quote, part is as a paraphrase, part of it's a quote. Winning an acquittal despite overwhelming evidence of guilt might be rare, but it does happen. And when it happens, it's usually because of, and this is a quote, unexpected and unpredictable trial events that stem from vigorous adversarial testing of the state's evidence. And what I take from that is, and I think anybody who's tried a case knows two things, especially if it was a defense attorney. Sometimes, cases look unwinnable. The other thing is, surprises do happen. And without having the chemist there to testify, without the question having been asked of Officer Sir Dunteman, or any question being asked of Officer Dunteman, we don't know whether there was a case that was successful. And that's really the point. There was no advocacy here. Some of the other cases talk about, I believe it's one of the 5th District cases, I'll do it by Justice Kimberlein-Keene, however it's pronounced. But he said, we're at a loss to find the advocacy here. And this goes back to the point, I think, that Justice Zinop raised about, and I think in a way, Justice Burkett raised this too, that we're kind of getting the minimum. Is there a case authority that you are aware of that says that failing to cross-examine is ipso facto or prima facie error? Does failing to cross-examine by itself? No. But here we have. Then if the failure to act is not per se error, and you haven't stated what would have happened, and I understand the difficulty of it, of being able to state what might have happened with any kind of certainty or probability, isn't this speculation? No. And in a way, I think what you're getting at is, that's the whole point of crime. That's why you have to presume prejudice. Because where there's no advocacy, where there's zero advocacy, where you haven't put the state to its test at all to meet its burden of proof. Well, that's not. And they, not cross-examining is different than Hattery, for example, or Morris, correct? Where there's an acknowledgement of guilt. There was no acknowledgement of guilt here. Right. Except that at sentencing, there was, by the defendant himself. When he apologized for wasting the court's time. That, I think, is an ambiguous statement. Is it? Yeah. Because he apologized, and then he went on to say he's going to change his ways. He's been going to classes, et cetera. That's, at the very least, a judicial admission, correct? I would not concede that that's a judicial admission, just that statement by itself. Just sorry for wasting your time has nothing to do with... We don't know what he meant by that, why he was sorry. That he was sorry that he didn't take the offer. He could be sarcastic and cynical. That's possible. We don't know the tone from the... I suspect not. Otherwise, I suspect he might not have gotten a minimum sentence. But... Could you comment on People v. Cherry? The L.A. Supreme Court's comments in People v. Cherry about chronic exception and how rarely it's used. Well, as I said before, maybe I didn't say this, I meant to say it. Rare doesn't mean never. Obviously, there are cases where they find chronic error. Cherry was a case where they said, we're not going to apply a chronic standard to an ineffective assistance claim against an attorney who represented the defendant at a crankle hearing. And they pointed out, this attorney wasn't even appointed until the defendant had been convicted, found guilty, and sentenced. Chronic doesn't have any play there because you're not at a point of conceding guilt or rolling over at sentencing or that sort of thing. And to get back to the point about whether we should look at the outcome of sentencing here, again, I'd point out that the basic premise of chronic, I think, in the other cases that I've cited, is that you have to put up some kind of fight. You have to do something. Hattery says, even if the evidence of guilt is overwhelming, chronic itself says, even when there's no theory of defense available. And in Dodson, I believe, they talk about that, yeah, Dodson and Jones talk about, those were stipulated defense trials, which I think apply analogously here, because there's a stipulation to at least 50% of the state's case, that you're not getting anything in return for this. And if it just happens to turn out that the defendant gets a good sentence, that doesn't retroactively absolve the attorney from not honoring his client's personal choice to plead not guilty. And that brings me to a point I'd like to make, if I may. Well, I want to make one other point I started to make about the stipulated to the lab results, and that is that the tests were done at the DuPage lab, which, checked online, it's at 501 North County Farm Road in Wheaton. So I asked this court to take judicial notice of that, it's a geographical fact that could be easily verified, and to also take judicial notice that it's essentially right across the street from the courthouse. But regardless of whether the chemist was available, whether she was miles away, it doesn't matter. You require the state to call her, and you cross-examine her. The final point that I wanted to make is that, although, as I said at the beginning, I represent Mr. Scott, but I also, in a sense, represent, what I'll call the community of criminal defense attorneys. I don't pretend to speak for them, but I speak as one of them. And my personal experience, my career trajectory is not a mad record, but as an officer of the court, I'll say that I've been an attorney for almost 37 years. And for almost 35 of those years, I've been practicing exclusively criminal defense work. Four of those years were at the trial level in King County, where I tried both felonies and misdemeanors. So I've been in this duress situation. I've had clients who insisted on going to trial despite seemingly unwinnable cases. So I feel some, both distress at Mr. Raff's nonfeasance, to use Justice McClaren's word, and also some empathy for him. But I have a duty to Mr. Scott to advocate for his interests. When you sign on as a criminal defense attorney, that's what you sign up for. When you become an attorney, you take an oath. I don't remember exactly what the oath says, but essentially, I'm sure part of the oath is, part of the canon of ethics is, you advocate for your client when your client makes a choice that the client is entitled to make. And an oath means there's kind of a sacred trust here, a sacred relationship, a duty to advocate for a client who's exercised an autonomy to plead not guilty. And I know I'm over my time, but just to finish the thought, there's a quote from Ferretta, which is a self-representation case. It talks about respect for the individual being the lifeblood of the law. And I think that's what chronic is about. The bottom line here is that the trial attorney in this case did not meet the very low chronic standard of some representation at trial. And therefore, I ask this Court to reverse Mr. Scott's conviction and remand for a new trial. Where in the record do you establish the burden? Pardon me? Where in the record do you establish the burden, especially insofar as Justice Burkett was inferring prejudice? Well, under chronic, there is no burden to show prejudice. Pardon me? Under chronic, there is no burden. It's presumed. Where the defense basically lays down. My burden is to show that there's non-representation here, that it fell below the chronic threshold. And I submit that that's not here. It seems from what I've heard and read, he failed to cross-examine one officer relative to the confession. But there's nothing to indicate that the confession was tainted. There might have been a surprise. Insofar as the chain of custody and the actual weight, there doesn't seem to be anything of record, possibly because there was no cross-examination to show to the contrary. But the record doesn't show anything that would suggest any prejudice. But that's the point. It's chronic. You presume prejudice from the absence of representation. And I respectfully submit that you have a trial attorney who filed no pretrial motions. We don't know whether there were grounds for a motion to quash and suppress the confession. I thought you said there was a transcript or a video of the confession. There is. But we don't know whether in conversations with Mr. Scott, Mr. Reth had grounds to file a motion to quash that. Although I am adding the fact that he also didn't put his client on the stand. And his client testified that he was beaten to a pulp. He was forced to confess. Or that that isn't him on the video. Well, Mr. Reth can't force Mr. Scott to testify. And in fact, Mr. Scott, I believe, was on the record and said, I'm choosing not to testify. So we don't know whether Mr. Scott told Mr. Reth off the record, hey, they coerced me. And this is why I said what I said on the video. And you should file a motion to quash. Does that then mean that the proper form is a post-conviction petition? That would be an option only if this court finds Cronick inapplicable. But that's the whole point of my argument. Cronick is applicable. Your argument is that the record does not show that it would have been fruitless to cross-examine the officer or the chemist. Exactly. And in Balslater, which you cite in your brief, the defendant in that case also got the minimum, correct? Wasn't it Balslater, the case where the drugs were dropped during the pursuit? Right. Yes. And he got six years. And I don't know if that's the minimum, if he was class X eligible, or if it was a class X amount. Off the top of my head, I don't remember. But he got a low sentence. Your point is that the record does not demonstrate that it would have been entirely fruitless to cross-examine a Johnson State's case. Right. And more generally, that there simply was no advocacy here. In Cronick, was there a post-trial expression of dissatisfaction with trial counsel? In Cronick itself, I honestly don't remember. Now, I know that there wasn't here. And my response to that is, I seem to be doing this a lot today. It's twofold. First, I don't think you can hold that against the client. He may not know that he had the right to file pro se motions. He may not know anything about the law. He may have never heard of Cronick. But he does know a lot about the law. At least he knows the criminal justice system. He's been through it multiple times. He's got multiple sentences to the penitentiary. So he's not an inexperienced defendant. It's one thing to say that. It's another thing to say that he has knowledge of the law, and specifically knowledge of the two standards, the difference between Cronick and Strickland. And at any rate, Cronick puts the burden on the lawyer who's acting on behalf of the client to advocate and to put the state's case to meaningful adversarial testing. It doesn't say, asterisk, it's okay if the attorney doesn't do anything if the client doesn't complain about it later. To Justice McLaren's point, aren't a lot of the arguments that you're making, we don't know this, we don't know that, really the subject, and should be the subject of a post-conviction petition when you're talking about your client's discussions with counsel. We don't know what he might have told counsel. Because this may have been a situation where, consistent with what he said at sentencing, I don't want to waste a lot of the court's time. It's a waste of time. We don't know, do we? We used to call those a slow plea. Right. And I'm glad you mentioned that because in thinking about this case, this was worse than a slow plea. This was a fast plea. And that's not advocacy. And yes, I think I said this before, should this court find that this doesn't rise to the level of a chronic violation here, Mr. Scott would have the option of filing a post-conviction petition. But again, that's the whole point of chronic, is that there's so little representation, there's no actual representation, that we're left to guess about what would have happened had there been representation. And by the nature of the violation means, we're in a position of having to guess, and we're not going to guess. We are going to presume prejudice. So this is the rare case I think that chronic applies. Thank you. Thank you. We'll have an opportunity to make rebuttal. Thank you. Ms. Fleming, you may proceed. Good morning, Your Honors. Counsel, may it please the Court. Mary Fleming, Assistant State's Attorney on behalf of the people. Your Honors, this is just simply not a chronic case. It's a very narrow exception. There has to be a complete failure of counsel. And interestingly enough, Mr. Chronic didn't even meet the chronic standard in that case. It's an extremely rare situation. But why was this not a complete failure of counsel, as Mr. Rogers just outlined? No cross-examination, stipulation to chain of evidence, to lab results. What did he do except stand there? Well, Your Honor, this was a much less complicated case than some of the chronic cases that we've looked at. The two cases where the Illinois Supreme Court has found chronic errors, those were complicated murder cases. This was a simple possession case. This was a bench trial. Okay, then why does that matter? Well, chronic itself tells us we can look at the complexity of the case. That's one thing we can look at. So the more complex, the less the attorney has to do? No, Your Honor. Okay, so then, okay. It's just one of the factors. We're looking at the record as a whole. And I'm going to admit this. It seems extreme when you look at it. That was my thought when I first looked at it as well. But you start to see counsel did a brief opening statement. He reminded the court that what the state just said is not evidence. Right, right. I'm correct. Very brave, very brave. All right, besides that, what did he do? He required the state to put on their case. They had the officer testify. He didn't cross-exam, but he was there in case the case went off the rails. If the police officer testified to something that wasn't in his report, he confused witnesses. If anything went awry. He could have raised the issue of the chain of custody because of the discrepancy between what was in the state's exhibit and what was described in the reports, correct? He could have. That's the only thing the defendant pointed to until today, that he could have brought up at all. But really, there were some strategical reasons to not bring up the drugs again. The defendant confessed to it. He told the police when they walked up to the car, I had drugs. The test showed he had drugs. His confession said he had drugs. This wasn't a closed case at all, which even defendant admits. But what about the amount? The discrepancy about the amount, even if it was what, 1.4 grams? Almost, of the cocaine that was in the seven baggies. And I believe it was 0.6 grams of the marijuana that was separate in the six separate rolled cigarettes, for lack of a better word. Were the marijuana and the other drug in the same bag? No. He had each crack cocaine rock was in a separate baggie, seven baggies that he had in his pants in the area in front of the zipper. And then he had three of the marijuana cigarettes in an unlabeled prescription bottle. But didn't the lab technicians say that there was only one bag? Was that it? No, but we got her. It was a brief stipulation, but she said, I believe she testified only was about on page 66. Okay, three rolled cannabis cigarettes. Those were in Exhibit 2. Counsel, I'm going to ask you to keep your voice up. We have people in the very back and it's a big room. So, oh, I'm sorry. Thank you for reminding me. Um, so Exhibit 1A. And then Exhibit 2 was the cigarettes. And then Exhibit 2A, I believe, was further cigarettes. And then Exhibit 3 was the bags with the spade markings. So they went through that there were several different exhibits generally, not specifically because there was a stipulation. There was a stipulation that those were drugs, and they met the amount that was alleged in the complaint. And in some cases, there just isn't a lot to be done like defendants. They're just, this wasn't a closed case. There was a confession. He stipulated to testing. His counsel never admitted to the crime, even though defendants did in his sentencing. He said he was sorry for everything. And the judge, actually, it's important that he took all of this into account. Is there anything in the record that capably jumped out, screaming, saying there should have been objection raised? No, a defendant didn't point to anything, either, until today. There's nothing that anyone pointed to that could have been objected to, that could have been cross-examined on. But he was there. Counsel was there to do it if it was necessary. And sometimes the testimony just doesn't need objected to, or a waste of time cross-exam may have damaged his case more. The judge. Well, the question is, where do you draw the line? I mean, if someone has a point of counsel, of course they have to be there. Correct? Correct. And so the question is, where do you draw this line so that we can see if there's a chronic violation or not? What trial strategy or tactics were there, especially if we can't look to the results here? I don't know if you agree with Mr. Rogers, that when we talk about entire proceeding, that excludes the result of this case, so that is the sentence, so the minimum sentence. But Dodson talked about looking at whether lesser punishment is a potential byproduct of the strategy. That's something as a whole that we can look at. And in a defendant who was... So you think we can look at that? Yes. He had a long history. He was subject to Class X sentencing. He received the minimum sentence. And the judge noted this. He noted the facts of the case. He noted the defendant's own words. He thought it was important that the defendant took responsibility. He thought it was important that the defendant hadn't yet delivered the drugs. He thought that it was important that he didn't challenge everything. He thought it was important that he was fairly honest with the officers. You know, have you ever heard the term crime directive? No. You ever watch Star Trek? Oh, sometimes my kids are really big Star Wars fans, though. My point is, what do you think the crime directive is of a trial? To make the state put on their case and try to put on the best defense. I submit to you that the crime directive is to ascertain, through a search, based upon some adversarial proceeding, the truth. Yeah. And so my question to you is, please explain to me how this proceeding, based upon the nature and extent of the adversarial proceedings that took place, did this defendant receive a fair trial based upon what? A reasonable person giving the trial court or the jury the benefit of the doubt that the truth was obtained? Well, it was an unusual case. It was a small case. There was a stipulation. That's not unusual, though, for parties to stipulate. And there was certainly a good reason to do so. The state put on the officer. He testified. There just wasn't anything that anyone has pointed to that could have been objected to. So you said, until today, points not raised in the brief are forthwith, correct? Correct. So sometimes there just isn't a lot to do with a small, simple case where there's a confession and what defendant confesses to corroborates the drug test. But you would agree with counsel, would you not? When you try a case, certainly things that are unexpected can happen. And by stipulating to the chain of evidence and to the lab results, defense counsel absolutely excluded any possibility that something could have happened or come out differently by entering into those stipulations. Is that correct? True. But he also could have taken a chance that those results were going to corroborate his confession. They were going to remind the court of the fact that there were drugs in this case. Well, even if the test results were overturned, he still confessed that he had drugs. He was a drug seller. We still had a lot of evidence. We certainly don't want to discourage stipulations because they are convenient. However, when that's all you've got, the only possible way to... A defense attorney's obligation, first and foremost, is to challenge the state's case and if he or she can, to obtain an acquittal. And beyond that, then, the best possible result. So here, the only potential chink in the state's armor would have been to challenge every piece because you're going down if the drugs come in because of confession. So why doesn't product apply when it came to challenging the testimony of the officer or the drugs counsel just laid down? And could you distinguish Ball Slater? Yes, absolutely. So in Ball Slater, very similar case. We have the same charge. We have both sides waived opening. We have no cross-examination of the officer's testimony, the stipulation to the drug testing. But we also have, in that case, the court pointing out ways that the officer's testimony could have been tested. They weren't looking at the stipulation. That wasn't the issue. Their sole issue was you could have tested the officer's testimony. And there was a misunderstanding by the defense attorney, too, which when you're looking at the record as a whole, you're looking at his strategy. And his strategy included, in that case, the idea that because the officer didn't specifically point out the defendant, that he hadn't been identified. There were some serious issues with his understanding of the case. Would it be reasonable to say or conclude that, based upon what the outcome of the case was, that if counsel's strategy was to get his client the minimum sentence possible, that he was successful? Correct. And there are a lot of things in this case we don't know because they were outside of the record that might have made it a better post-conviction claim. But we're here today on the direct appeal of it. And if defendant is asking for a new trial, to be honest, that may not be his best result. He got the minimum sentence on a class-X felony. We go back to trial. He's actually already out of the Department of Corrections right now. He's in parole district number one right now. He can't get more time than he did, can he? If the trial is vacated and he goes back, it's possible. Unless he's a bad boy. Exactly. We may have an aggravation. And we've still got his confession and the drug test results. But if he had committed some aggravating factors, I doubt he'd be on parole. That's a good point. So should I go back and forth for five minutes or should we just stop? No, we're good. I can stop now. Thank you. Do you agree with defense counsel that the defendant's expression of remorse and his apology to the court, quote, as far as wasting everybody's time on this case, is irrelevant to our consideration? Absolutely. It shows that he agreed. Is it relevant then? Yes, absolutely. And it showed he agreed with the strategy. It showed his guilt, which he had confessed repeatedly through the case. This was just a case where there wasn't a lot to be done. And defense counsel did what he could. And the court's judgment was that the defendant's confession and his apology required the state to put on their case. And for that reason, we would ask this court to hold the judgment. Thank you. Thank you. Mr. Rogers? Thank you, Your Honor. Speak up a little louder, please. I'm sorry. To clarify about what the nature of the stipulation was, I will read directly from it. Officer Dunton testified there were seven, he retrieved seven baggies. And he put the seven baggies in the envelope. And the seven baggies were People's Exhibit 1A. The stipulation, paragraph three. Chemist would testify that inside People's Exhibit 1 was People's Exhibit 1A. A baggie containing an off-white, chunky substance. So there's only one baggie that was tested. I think you made those points earlier. Okay. You missed that because it's not in your brief, right? That specific point is in the brief, but the stipulation is. I know. The stipulation is in the brief, but this argument that that could have been raised and been a point of contention, that argument you're making here is not in your brief, correct? Yes, but I would... The answer is yes. So you missed something that trial counsel should have seen. Is that your argument? This is my response to your question. But that's your argument. Well, my argument is that counsel, that's something counsel could have done. In listing the things that counsel could have done in my brief, I didn't mention this. And I'll be honest, you know, that would have been nice if I had added that. But I don't think that forfeits any argument. Because the argument is that counsel didn't meet the chronic standard. And this is just an example, another example of the way in which counsel failed to advocate in response to what else could counsel have done. And one of the points that I want to respond to is the state talked about, well, this was a small case. And I submit it might be a straightforward case. It might seem like a straightforward case. It's not a small case of a client. There's no small cases in the criminal justice system. Exactly. There's no clients. Right. Every case is important to the client. And counsel required the state put on its evidence to prove its case. And he was there in case something went off the rails towards the bad effect. Well, the reason they didn't go off the rails is because counsel did nothing to try to make them go off the rails. And that's exactly the point of crime, is that's your job. You have to do your job as a criminal defense attorney. And it wasn't done here. And trial clarification You're an appellate defender, are you not? Pardon me? You're an appellate defender. I am. You took an oath of office, didn't you? Yes, I did. I believe it. And that was to support the Constitution and the Statute of the State of Illinois. Exactly. And based upon the canons of ethics, you're supposed to represent your client, right, to the best of your ability. So what happens when there's a conflict between what your client may have told you, based upon what he told the court, that he's guilty as sin and you're supposed to make argument that gets him off? Is that a violation of your oath or is it not? No, because I think your premise isn't correct. I don't think that Mr. Scott ever said on the record that he was guilty. Now, counsel can't suborn perjury, obviously. But that doesn't mean that counsel could pursue a strategy that didn't require Mr. Scott testifying at all. When you say on the record, you mean an open court, don't you? Yeah, that's the record. As opposed to a recorded confession, which might be deemed on the record? It's evidence that's on the record, but it's not. So yes, there was evidence of a confession. But again, you're a criminal defense lawyer. You're trying a case. You try to challenge that. And even if you're stuck with the admission, if your strategy is, well, I'm not going to challenge that he made the statement, as I pointed out before, in the statement is, I only got half a gram. OK, light bulb goes off. Maybe I can challenge the weight here. Maybe I can ask the forensic chemist, exactly how did you get this baggie? Was it really in a sealed condition, the envelope? Tell me about that. Tell me exactly what you weighed. Why, what happened to the other six baggies? You don't know what's going to happen if you do that. Your point is, obviously, that no matter how guilty the defendant may be, your obligation as an attorney is to zealously advocate for his acquittal. Exactly, within the bounds of the law. And here, the challenge to the weight may have made a difference. Sure, yeah. My time's up, so I won't say anything more. I'm ready for a lot of cases on this call. I appreciate your attention. And again, I just renew the request to reverse Mr. Scott's conviction. I'm ready for a new trial. Thank you. There's another case on the call. We'll take a short break.